UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOE REED, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No:  4:18CV1818 HEA |
| | ) |
| STANLEY PAYNE, | ) |
| | ) |
| Respondent. | ) |

**OPINION, MEMORANDUM AND ORDER**

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No. 1] on October 25, 2018. Petitioner's attorney filed his entry of appearance on January 15, 2019. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted on May 29, 2019. Petitioner filed his traverse on October 24, 2019. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons set forth below, the Response is well taken, and the Petition will be denied.

**Factual Background**

Petitioner was found guilty of first-degree tampering and resisting arrest,

two counts of first-degree robbery, and two counts of armed criminal action.[1] He was sentenced to concurrent terms of thirty years for the counts of first-degree robbery and armed criminal action, seven years for first-degree tampering, and four years for resisting arrest in the Missouri Department of Corrections. Petitioner appealed his conviction and sentence to the Missouri Court of Appeals. Petitioner also filed a post-conviction Rule 29.15 Motion. The Motion Court denied the motion, as did the Missouri Court of Appeals.

The Missouri Court of Appeals summarized the relevant facts in its Opinion affirming the conviction and sentence:

> Reed was charged with several felony offenses—three counts of first-degree robbery, three counts of armed criminal action, one count of first-degree tampering with an automobile, one count of resisting arrest, and one count of second-degree tampering—arising out of three separate incidents. On January 4, 2010, a silver 2005 Chrysler 300M was stolen from three victims at a gas station when they left the vehicle running while they went inside. On January 10, 2010, while driving the stolen Chrysler, Reed rear-ended another vehicle and then robbed at gunpoint the vehicle's three occupants who had emerged from the vehicle after the collision. With the assistance of his three armed passengers, Reed robbed one of the victims of a wallet and a cell phone. Reed and his passengers also stole stereo equipment, money, and a credit card, and attempted to remove the radio from the victims' vehicle. Finally, on January 13, 2010, police officers spotted Reed driving the stolen Chrysler. Reed exited the vehicle and after a police pursuit was apprehended and arrested.

---

[1] Petitioner's convictions were a result of two separate jury trials. Following the first jury trial, Petitioner was found guilty of first-degree tampering and resisting arrest. However, the jury was unable to reach a verdict on the counts of first-degree robbery and armed criminal action, and the trial court declared a mistrial as to those counts. A second jury trial was held. The jury found Petitioner guilty of two counts of first-degree robbery and two counts of armed criminal action.

A. Pretrial Identification Procedures

After Reed's arrest, the investigating police officers separately interviewed two of the victims of the January 10, 2010, robbery. Each was shown a picture of a phone found on Reed's person at the time of his arrest, and a picture of the vehicle Reed drove at the time of his arrest. Each victim identified the phone as belonging to one of them, and the vehicle as the one they saw at the time of the robbery. Then the officers conducted a series of physical lineups. The two victims were shown the lineups separately and without an opportunity to confer about what they saw. During the lineups, an officer stood with each victim at the viewing window and warned each that Reed may not be in the lineup. The victims identified only two people— Reed and his former co-defendant, Christopher Robbins—out of the six lineups they were shown. Both victims stated that Reed was the person who committed the robbery, and that each was one-hundred percent certain in their identification of him. By the time of Reed's trial, three years after the lineups took place, the victims were no longer certain of their identification of Robbins. Both testified at trial, however, that they remained certain about their identification of Reed.

B. Closure of the Courtroom During Part of Trial

Before the start of the third day of Reed's trial, the trial court was informed by a courtroom deputy that a juror had expressed concerns about the presence of members of Reed's family and a former co-defendant in the courtroom. The court conferred with counsel on how to handle the matter including whether to interview the juror. The court stated that "subject to" the views of counsel, it would close the courtroom to the public. The court also left it up to counsel whether to talk to the juror. Reed's counsel, out of an "abundance of caution," asked that the juror be brought forward to determine whether she could remain fair and impartial. Because no alternate jurors remained, the court expressed reluctance to speak with the juror. But the court found Reed's counsel's request to be "not unreasonable" and granted it. With the juror in the courtroom, the court verified that the she was concerned and then proposed to her that for the remainder of the trial, the courtroom would be closed and she would be accompanied by a member of the court's security personnel. The court asked the juror whether, if such actions were taken, she could remain fair and impartial. The juror confirmed that she could. Then, the court invited Reed's counsel to ask any additional question or suggest or request any additional relief, but he expressly

3

declined. Finally, the court dismissed the juror and ordered the courtroom closed for the rest of the trial. Neither party's counsel objected to the court's handling of the matter or to its ultimate decision to close the courtroom.

C. Police Officer York's Testimony

During trial, Officer York testified that on the day Movant was arrested, he was informed that police had five men in custody who were potential suspects in the robbery. Four of the men, including Movant, were arrested together, and the fifth man, Coleman, a known associate of Movant, was arrested separately. Officer York subsequently conducted in-person lineups of each suspect. Officer York testified the victims positively identified Movant as the driver of the car that rear-ended them and the person who was "calling the shots in the robbery." However, Officer York testified the victims did not identify Coleman as one of the other three robbers. When the State asked Officer York how Coleman became a suspect, the following colloquy occurred:

A: Well, he was a person of interest in this case because I was advised by Detective Werninger, who is in the anticrime task force, they work with, you know, drugs, guns, gangs. They know --
Q: Let's stop right there. Is there something called Crime Matrix?
A: Yes.
Q: Does Crime Matrix link people in a system who may have been interviewed together or stopped together?
A: Yes, that's correct. Shared addresses, shared phone numbers, yes.
Q: Okay. And so [Officer] York, when you run Crime Matrix, if you ran Crime Matrix with [my name] would people that I share arrests with and people that I've been pulled over with --
A: Yes.
Q: -- come up and link to me?
A: Yes.
Q: Did Kenneth Coleman ever link to [Movant]?
A: Yes. I was provided that information by Detective Werninger.
Q: Okay. And so with that information what did you do?
A: Well, we facilitated a lineup knowing that he's a known associate, and we brought him down for a lineup as he could be possibly one of the four people who was in the car that robbed the victims.

4

Next, Movant argues counsel failed to object to Officer York's testimony regarding the submachine gun found in Coleman's possession. Specifically, Officer York testified as follows:

Q: Okay. So and in this case did you ever get any more information about any weapons that were used during the crime?
A: I did.
Q: And how did you get that information?
A: Well, the victim said that there was a submachine gun used in the robbery. I was advised by Detective Werninger that someone in the violent crimes task force or anti-crime unit, another unit had taken another individual in custody and recovered a submachine gun which matched the description.
Q: Was that Kenneth Coleman?
A: It was.

Petitioner now raises five grounds for relief, alleging that the trial court erred when it: (1) closed a portion of the trial due to a juror's concerns over her safety; (2) failed to *sua sponte* declare a mistrial; (3) overruled Petitioner's motion to suppress pretrial identification; and ineffective assistance of counsel for failing to object to (4) the partial trial closure; and (5) the hearsay testimony of Officer York.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted

5

with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was

6

based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**Statute of Limitations**

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus. That window opens at the conclusion of direct review. The window closes a year later. Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28

U.S.C. §2244(d) (1) (A); *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), *cert. denied*, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

### Ineffective Assistance of Counsel

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); see also Strickland, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging

8

in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is

9

unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor

10

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Petitioner states five grounds for relief.

### **Grounds One and Two – Courtroom Closure/Failure to Call a Mistrial**

Grounds One and Two, raised on direct appeal, are closely related, and will be analyzed together. In Ground One, Petitioner argues that the trial court plainly erred in excluding the public from the remainder of his trial after a juror expressed concerns due to the presence in the courtroom of members of Petitioner's family

11

and his former co-defendant. However, the Missouri Court of Appeals found that Petitioner's counsel waived plain error review of the courtroom closure:

> We find, however, that Reed's counsel waived plain error review of the closure by affirmatively acquiescing in the closure, in that he agreed to the court's handling of the matter and did not object when the court proposed closure of the courtroom "subject to" his view.

In Ground Two, Petitioner asserts that the trial court plainly erred in failing to *sua sponte* declare a mistrial due to the juror's stated concerns and violated his right to a fair and impartial jury. Petitioner argues the juror had already prejudged the evidence and his guilt and should have been excused from the jury. Since there were no alternate jurors available, Petitioner concludes that a mistrial was required. As stated above, Petitioner's counsel did not object to the courtroom closure.

The Missouri Court of Appeals found there was no basis to find that the trial court plainly erred in failing to *sua sponte* declare a mistrial:

> We find that the court did not plainly err in failing to *sua sponte* declare a mistrial. Reed fails to make a facial showing of plain error justifying review—he does not cite any facts showing that the court could not reasonably have determined that the juror could remain fair and impartial despite her concerns.

Both claims are procedurally defaulted because they were not properly preserved for appellate review. No error occurred, and the Missouri Court of Appeals so found.

Unpreserved claims cannot serve as a basis for reversing the judgment of conviction. A claim must be presented at each step of the judicial process in state

12

court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray,* 477 U.S. at 478. Petitioner fails to demonstrate cause for his procedural default, and he cannot establish any prejudice for the failure from the alleged unconstitutional errors. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has not presented any new evidence of actual innocence or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi*, 450 F.3d at 338. Consequently, the claims raised in Grounds One and Two are procedurally barred from habeas review and will be denied.

### Ground Three – Pretrial Identification

In Ground Three, Petitioner claims that the trial court plainly erred in overruling his motion to suppress the evidence identifying him in this case. Petitioner raised this ground on direct appeal but did not raise it in his motion for new trial. Petitioner argues because the Missouri Court of Appeals reviewed this claim for plain error, it is not procedurally defaulted. However, a claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly*, 28 F.3d at 53. Therefore, Ground Three is procedurally defaulted and will be denied.

13

## Ground Four – Ineffective Assistance of Counsel/Courtroom Closure

Ground Four, raised in Petitioner's post-conviction motion, relates to the courtroom closure as explained above in Grounds One and Two. Petitioner claims counsel was ineffective for failing to object to the closure of the courtroom. Specifically, Petitioner argues trial counsel should have objected on the grounds that he had a constitutionally protected right to a public trial, that all members of the public had a constitutionally protected right to attend the trial, and that feeding into the juror's fears made Petitioner look dangerous and menacing by association.

The Missouri Appeals Court concluded this ineffective assistance of counsel claim was without merit:

> Moreover, it is apparent from the record as a whole why trial counsel did not object to the trial court's decision to close the courtroom. See *Manley v. State*, 488 S.W.3d 145, 149 (Mo. App. E.D. 2016) (finding the record as a whole was sufficient to review the basis of the courtroom closure). While the trial court barred members of Movant's family and his former co-defendant from the courtroom, the trial court, in considering reasonable alternatives, in no way prevented the rest of the public from attending the trial. Rather, the court only limited the public's ability to go in and out of the courtroom during the remainder of the proceedings, which included the testimony of one witness, a defense exhibit, and closing arguments. Additionally, the fact that the juror reported feeling scared, there was no available alternate juror, and trial counsel acknowledged the jury box was only about seven feet from the front of the spectator area in the courtroom, supports the presumption of reasonable trial strategy. Further, following the discussion with the juror, the trial court explained to the other jury members that it was closing the courtroom to prevent any disruptions from people going in and out of the courtroom as the trial was almost over. The court neither told the jury members about the juror's concerns nor did it draw the jury's attention to the fact that it barred Movant's family and former co-defendant from the courtroom. Based on this evidence, we find Movant failed to demonstrate

that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances.

Although counsel did not specifically recall a strategic decision for not objecting, he testified he did not feel Petitioner would have any prejudice or harm from the courtroom closure, consistent with the explanation for the denial above. Further, the failure to remember any strategic strategy does not render counsel's representation ineffective. The Court must ascertain "[w]hether trial counsel performed so deficiently 'that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment." *Fretwell v. Norris*, 133 F.3d 621, 623–24 (8th Cir. 1998), quoting *Strickland,* 466 U.S. at 687.

> "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'
>
> *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *see Brant v. Nix,* 58 F.3d 346 (8th Cir.1995). To nullify the distorting effects of hindsight, and to give this presumption its full weight, we will examine counsel's trial tactics and strategy as revealed by the state court record because that record best reflects "'counsel's perspective at the time.'"

*Id.*

The Missouri Court of Appeals, in reviewing the post-conviction motion

15

denial considered Petitioner's claim of ineffective assistance of counsel under *Strickland*, thus its conclusion is neither an unreasonable interpretation nor contrary to clearly established federal law. Ground Four will be denied.

**Ground Five – Ineffective Assistance of Counsel/Officer York's Testimony**

In Ground Five, Petitioner argues counsel was ineffective for failing to object on grounds of hearsay, confrontation, and uncharged bad acts to Officer York's testimony that (1) he was told, according to the "Crime Matrix," Petitioner was linked to Coleman, and (2) was told Coleman was taken into custody and found in possession of a submachine gun that "matched the description" of the submachine gun described by the victims of the robbery. This claim was raised in Petitioner's post-conviction proceeding.

As to the failure to object to the "Crime Matrix" testimony issue, this was rejected by the Missouri Court of Appeal as meritless because the testimony regarding the "Crime Matrix" was not hearsay as it was relevant to an explanation of the police investigation and Officer York's testimony did not suggest Petitioner's guilt of any unrelated crime. The Court of Appeals further noted had trial counsel objected to Officer York's testimony on grounds of hearsay and uncharged bad acts, it is unlikely the court would have sustained the objection, and therefore, counsel will not be deemed ineffective for failing to make a non-meritorious objection.

16

As to the failure to object to the submachine gun description, this was also rejected by the Missouri Court of Appeal, finding Petitioner cannot satisfy the prejudice prong of *Strickland*:

> A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Williams v. State*, 226 S.W.3d 871, 875 (Mo. App. S.D. 2007); *State v. Myers*, 248 S.W.3d 19, 25 (Mo. App. E.D. 2008). During trial, two of the robbery victims positively identified photographs of the submachine gun found in Coleman's possession as the gun used in the robbery. Defense counsel did not object to either the victims' testimony or the admission of the photographs into evidence. Thus, Officer York's testimony was merely cumulative to the victims' testimony and not prejudicial to Movant.

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the *Strickland* standard was unreasonable." See *Harrington*, 562 U.S. at 101; see also *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.* at 105.

17

The Missouri Court of Appeals correctly identified *Strickland* as the standard to apply regarding this claim and its application was not unreasonable for the reasons stated. Consequently, this ground for relief must be denied.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits and must be denied in all respects.

## Certificate of Appealability

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

18

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Movant has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 30th day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE